United States District Court
Southern District of Texas

**ENTERED**

October 20, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SEAN WHITE,                          §
                                     §
            Plaintiff,               §
                                     §
v.                                   §        CIVIL ACTION NO. H-20-0496
                                     §
FRIENDSWOOD CAPITAL CORPORATION,     §
                                     §
            Defendant.               §

## MEMORANDUM OPINION AND ORDER

Plaintiff Sean White ("Plaintiff") asserts a claim for declaratory and injunctive relief for violations of the Americans with Disabilities Act ("ADA") against Friendswood Capital Corporation ("Defendant").[1] Pending before the court is Defendant Friendswood Capital Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or in the Alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e), or, in the Alternative, Motion for Judgment On the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and Brief in Support of Same ("Motion to Dismiss") (Docket Entry No. 21). For the reasons stated below, Defendant's Motion to Dismiss as to Rule 12(b)(1) will be granted. It is therefore not necessary to reach Defendant's remaining Rule 12 motions.

---

[1]First Amended Complaint ("Amended Complaint"), Docket Entry No. 10, pp. 1-2 ¶ 1. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I.  Factual and Procedural Background

Defendant owns commercial property located at 3738 Westheimer Road, Houston, Texas 77027 ("the Property").[2]  Plaintiff alleges that he visited a branch of Texan Bank located on the Property in January of 2020.[3]  Plaintiff suffers from mobility impairments and alleges that his access to the Property was inhibited by the Property's failure to provide an ADA-compliant van accessible parking space.[4]  Plaintiff also alleges that the Property parking lot lacks an ADA-mandated "access aisle" and that its grade unlawfully exceeds five percent.[5]  Plaintiff filed this action on February 14, 2020, seeking injunctive and declaratory relief against Defendant under the ADA.[6]  The injunction Plaintiff seeks is "to compel Defendant[] to repave the disabled parking space to be level, install signage, install an access aisle, and install a ramp to comply with the Title 42 U.S.C. § 12205 requirements of a Van Accessible Space."[7]

On March 19, 2020, Plaintiff moved for entry of default against Defendant.[8]  An order granting entry of default was filed

_____

[2]Motion to Dismiss, Docket Entry No. 21, p. 9 ¶ 8.

[3]Amended Complaint, Docket Entry No. 10, p. 5 ¶ 13.

[4]Id. at 1-2 ¶¶ 1-2.

[5]Id. at 4 ¶ 12.

[6]Original Complaint ("Complaint"), Docket Entry No. 1, pp. 7-8 ¶¶ 21-24.

[7]Amended Complaint, Docket Entry No. 10, p. 8 ¶ 23.

[8]Motion for Clerk's Entry of Default, Docket Entry No. 7.

on April 15, 2020.[9]  On August 11, 2020, Defendant moved to set aside the entry of default[10] for good cause, and also sought leave to file a Motion to Dismiss.[11]  On August 14, 2020, the court granted Defendant's request to set aside the entry of default[12] and granted Defendant leave to file a Motion to Dismiss.[13]  That same day, Defendant filed its Motion to Dismiss.[14]  Plaintiff responded on September 21, 2020.[15]  Defendant replied on September 28, 2020.[16]

## II.  12(b)(1) Subject Matter Jurisdiction

Defendant argues that the court lacks subject matter jurisdiction over this action because Plaintiff does not have standing to seek the declaratory and injunctive relief he seeks.[17]

---

[9]Order, Docket Entry No. 8.

[10]Defendant Friendswood Capital Corporation's Motion to Set Aside Entry of Default and Memorandum in Support, Docket Entry No. 16.

[11]Defendant Friendswood Capital Corporation's Memorandum in Support of Motion for Leave to File Its Motion to Dismiss, Docket Entry No. 17.

[12]Order on Defendant's Motion to Set Aside Entry of Default, Docket Entry No. 19.

[13]Order on Defendant's Motion for Leave to File Motion to Dismiss, Docket Entry No. 20.

[14]Motion to Dismiss, Docket Entry No. 21.

[15]Response in Opposition to Defendant Friendswood Capital Corporation's Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 22.

[16]Defendant Friendswood Capital Corporation's Reply to Plaintiff Sean Whuite's Response in Opposition to Defendant's Motion to Dismiss ("Defendant's Reply"), Docket Entry No. 23.

[17]Motion to Dismiss, Docket Entry No. 21, p. 14.

The court must decide whether it has subject matter jurisdiction over the action before it may consider Defendant's other Rule 12 motions.  <u>See Morris v. Livingston,</u> 739 F.3d 740, 745 (5th Cir. 2014) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (internal quotations and citations omitted).

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  <u>Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi,</u> 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations and citations omitted).  Plaintiff, as the party asserting federal jurisdiction, bears the burden of showing that the jurisdictional requirements have been met.  <u>Alabama—Coushatta Tribe of Texas v. United States,</u> 757 F.3d 484, 487 (5th Cir. 2014).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  <u>Spokeo, Inc. v. Robins,</u> 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted).  One element of the case-or-controversy requirement is that a plaintiff must establish, on the basis of the

-4-

complaint, standing to sue. <u>Raines v. Byrd,</u> 117 S. Ct. 2312, 2317 (1997) (citing <u>Lujan v. Defenders of Wildlife,</u> 112 S. Ct. 2130, 2136-37 (1992)).   To have standing "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo,</u> 136 S. Ct. at 1547 (citing <u>Lujan,</u> 112 S. Ct. at 2136).

"[A] plaintiff must demonstrate standing for each claim he seeks to press" and have "standing separately for each form of relief sought." <u>DaimlerChrysler Corp. v. Cuno,</u> 126 S. Ct. 1854, 1867 (2006) (citation omitted).   The precise requirements for standing depends on "the nature and source of the claim asserted." <u>Warth v. Seldin,</u> 95 S. Ct. 2197, 2206 (1975)).   "[I]f the plaintiff seeks equitable relief, he must also show that 'there is a real and immediate threat of repeated injury.'" <u>Deutsch v. Annis Enterprises, Inc.,</u> 882 F.3d 169, 173 (5th Cir. 2018) (quoting <u>City of Los Angeles v. Lyons,</u> 103 S. Ct. 1660, 1665 (1983)).   "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." <u>O'Shea v. Littleton,</u> 94 S. Ct. 669, 676 (1974).

## B.   Analysis

At issue is whether Plaintiff's pleading under Title III of the ADA shows an injury sufficient to confer standing.   Title III

-5-

of the ADA limits a plaintiff to "injunctive relief, and a restraining or other similar order." Deutsch, 882 F.3d at 173 (citing Plumley v. Landmark Chevrolet, Inc., 122 F.3d 308, 312 (5th Cir. 1997) (citing 42 U.S.C. § 12188). Thus, ADA plaintiffs must meet the standing requirements for equitable relief, i.e. they must show "a real and immediate threat of repeated injury." Id.

Courts have developed two analytical frameworks for determining whether an ADA plaintiff has standing to seek injunctive relief: (1) the intent-to-return theory and (2) the deterrent-effect doctrine. See, e.g., Giterman v. Pocono Medical Center, 361 F. Supp. 3d 392, 405 (M.D. Pa. 2019) ("A plaintiff seeking to meet his burden of showing a sufficient imminent injury in a Title III ADA case may use one of two methods: the intent to return method or the deterrent effect doctrine.") (internal quotations and citations omitted); Van Winkle v. Houcon Partners, L.P., 2018 WL 3543908, at *6 (S.D. Tex. July 3, 2018) ("The intent-to-return approach and the deterrent-effect approach are two alternative methods of establishing an imminent threat of harm.") (internal citations omitted); Gilkerson v. Chasewood Bank, 1 F. Supp. 3d 570, 592 (S.D. Tex. 2014) ("[Plaintiff] claims that . . . she can satisfy both tests for injury-in-fact: the intent-to-return to the noncompliant public accommodation and the deterrent effect doctrine.").

Both approaches have been used by district courts within the Fifth Circuit. See, e.g., Access 4 All, Inc. v. Wintergreen

-6-

Commercial Partnership, Ltd., 2005 WL 2989307, at *4 (N.D. Tex.
Nov. 7, 2005) (relying on intent to return); Betancourt v.
Federated Dept. Stores, 732 F. Supp. 2d 693, 707-08 (W.D. Tex.
2010) (relying on deterrent effect).

Defendant argues that Plaintiff has failed to establish
standing, regardless of which framework the court applies.[18]  For
the reasons set forth below, the court agrees.

1.  "Intent to Return"

The intent-to-return theory holds that a plaintiff must
demonstrate a specific intent to return to the noncompliant public
accommodation in order to show continuing, present adverse effects
and thereby establish standing under Title III of the ADA.  Mosley
v. Midas Worthington, LLC, 2020 WL 113350, at *6 (M.D. La. Jan. 9,
2020).  This analysis draws support from Lujan, in which the United
States Supreme Court held that a plaintiff's profession of a mere
"some day" intention to return to the site of an alleged injury is
not enough to show continuing, present adverse effects —
particularly when the plaintiff neither describes any concrete
plans to return nor even specifies when the "some day" will be.
Lujan, 112 S. Ct. at 2138.  Accordingly, the intent-to-return
theory requires a plaintiff to show a "concrete, particularized,
and plausible plan to return to the out-of-compliance public

---

[18]Defendant's Reply, Docket Entry No. 23, p. 5 ¶ 10.

accommodation that discriminated against her." <u>Gilkerson,</u> 1 F. Supp. 3d at 581.

A number of courts, including district courts in the Fifth Circuit, have applied a four-factor proximity test to determine if a plaintiff has intent to return to a noncompliant public accommodation: (1) the proximity of plaintiff's residence to the public accommodation; (2) the plaintiff's past patronage of the public accommodation; (3) the definitiveness of plaintiff's plan to return; and (4) the frequency of plaintiff's nearby travel. <u>Id.</u> at 592 (internal citations omitted).

The Plaintiff alleges that he is "a resident of Conroe, Texas who frequently takes his family to the Galleria area of Houston for shopping and dining."[19] This puts Plaintiff within less than fifty miles of the Property and establishes that Plaintiff travels nearby with some frequency, arguably satisfying elements (1) and (4) of the four-factor test. <u>See Gilkerson,</u> 1 F. Supp. 3d at 592 (a plaintiff who lived less than fifty miles from the accommodation did not fail the proximity element).

While these factors may render Plaintiff's return to the Property plausible, they fall short of demonstrating a "concrete, particularized" plan to return. <u>See id.</u> at 581. Plaintiff does not allege that he ever visited the Property before or after he photographed the parking lot in January of 2020. Defendant

---

[19]Plaintiff's Response, Docket Entry No. 22, p. 7.

contends, and Plaintiff does not dispute, that Plaintiff is not a customer of Texan Bank.[20]   These facts militate against finding standing for Plaintiff under the second proximity-test factor, "past patronage."   Given that Plaintiff has not alleged any other connection to Texan Bank, this factor alone could be dispositive. See Davis v. American Nat. Bank of Texas, 2012 WL 7801700, at *6 (E.D. Tex., Dec. 11, 2012) ("A plaintiff's lack of past patronage negates the possibility of future injury unless he can show a business or familial connection to the location.") (internal citation omitted).

Furthermore, Plaintiff does not claim an intention to ever become a Texan Bank customer.   Nothing in the record suggests that Plaintiff ever contacted the bank to discuss opening an account or to remedy the alleged noncompliance of the Property's parking lot. Defendant contends, and Plaintiff does not dispute, that to the best of Defendant's knowledge, Plaintiff failed to bring this alleged issue to Defendant's attention before Plaintiff filed this lawsuit.[21]   This does not suggest that Plaintiff was genuinely seeking to become a Texan Bank customer.   Although Plaintiff asserts that Defendant has denied him the ability to enjoy the "goods, services, facilities, privileges, advantages, and

---

[20]Defendant's Reply, Docket Entry No. 23, pp. 3–4 ¶ 8.

[21]Motion to Dismiss, Docket Entry No. 21, p. 9 ¶ 9.

accommodations" at the Property,[22] Plaintiff does not specify which goods or services he was seeking, or even allege that he was seeking any goods or services at all.

Instead, Plaintiff alleges only that he "has the intent to return to Texan Bank."[23]  This is enough to raise the possibility that Plaintiff may eventually return to the Property, but it is not enough to constitute a "definitive" plan under the third element of the proximity test.  <u>See, e.g., Van Winkle v. Pinecroft Center, LP</u>, 2017 WL 3648477, at *7 (S.D. Tex., Aug. 23, 2017) ("Nor is Plaintiff's ambiguous pleading of his intent to return to Defendant's establishment, the third factor, adequate to establish Article III standing—he does not specify any dates, how often he intends to visit, or why he intends to visit it."); <u>Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.</u>, 2005 WL 2989307, at *4 (holding that the definitiveness factor did not weigh in plaintiff's favor when the complaint merely alleged that plaintiff intended to return to the property to avail himself of the goods and services offered there).

Plaintiff has failed to allege sufficient facts to show an intent to return to the Property.  He expresses a mere "some day" intention, which falls well short of a "concrete, particularized, and plausible plan."  <u>See Gilkerson</u>, 1 F. Supp. 3d at 581.  Under

---

[22]Plaintiff's Response, Docket Entry No. 22, p. 7.

[23]First Amended Complaint, Docket Entry No. 10, p. 5 ¶ 14.

the intent-to-return theory, Plaintiff has not established standing.

2.   "Deterrent Effect"

Under the deterrent effect view, a disabled individual "suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 949 (9th Cir. 2011).  The doctrine was first recognized as a way to confer standing in Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133.  In that case, a plaintiff who relied on a wheelchair sued a grocery store because he encountered accessibility barriers that deterred him from returning to the store.  Id. at 1135.  Notably, the plaintiff had patronized a number of other stores in the same chain, had declared that chain to be his favorite, and explicitly pleaded that he would have liked to patronize the specific store in question but for the store's unlawful barriers.  Id.

Although neither the Supreme Court of the United States nor the Fifth Circuit has clearly adopted the deterrent-effect doctrine, it has been applied by district courts within the Fifth Circuit.  For example, the court in Betancourt v. Ingram Park Mall, L.P. took a broad view of "injury" under Title III, writing that "the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff

-11-

remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant." 735 F. Supp. 2d 587, 604 (W.D. Tex. 2010).

The deterrent-effect approach is grounded in the ADA's language stating that a plaintiff need not "engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA. 42 U.S.C. § 12188(a)(1). The Fifth Circuit relied on this statutory language in Frame v. City of Arlington, 657 F.3d 215 (5th Cir. 2011). In that case, the court held that plaintiffs need not actually use an ADA-noncompliant sidewalk to have standing because "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the non-ADA-compliant accommodation] actually affects his activities in some concrete way." Id. at 236. The Fifth Circuit favorably cited Pickern, 293 F.3d at 1136-37, for the proposition that a plaintiff has suffered an injury once the plaintiff has "actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation[.]" Id. at 236, n.104. Some district courts have interpreted the Frame decision as the Fifth Circuit's endorsement of the deterrent-effect doctrine. E.g., Van Winkle v. Houcon, 2018 WL 3543908, at *7; Hunter v. Branch Banking and Trust Co., 2013 WL 4052411, at *3 (N.D. Tex., Aug. 12, 2013).

-12-

Plaintiff urges the court to adopt the Fifth Circuit's reasoning in Frame.[24]  Plaintiff relies on the Fifth Circuit's statement that "'imminence' is an 'elastic concept' that is broad enough to accommodate challenges to at least some [barriers] that a disabled person has not personally encountered." Frame, 657 F.3d at 235.  Yet Plaintiff leaves out crucial surrounding language from Frame:

> Mere 'some day' intentions to use a particular [ADA-noncompliant accommodation], 'without any description of concrete plans,' does not support standing. . . . [A] plaintiff may seek injunctive relief with respect to a soon-to-be-built sidewalk, as long as the plaintiff shows a sufficiently high degree of likelihood that he will be denied the benefits of that sidewalk once it is built.

Id.

The crux of the Frame decision was that, while plaintiffs did not need to engage in the "futile gesture" of using ADA-noncompliant sidewalks, they did need to show that the sidewalks affected their activities in "a concrete way." Id. at 235-36. "[A] disabled individual has no standing to challenge an inaccessible sidewalk until he can show 'actual,' 'concrete plans' to use that sidewalk.  Only then is the individual actually, as opposed to hypothetically, denied the benefits of the sidewalk." Id. at 238.  The plaintiffs in Frame met that burden and established standing because they "alleged in detail how specific inaccessible sidewalks negatively affect[ed] their day-to-day lives

---

[24]Plaintiff's Response, Docket Entry No. 22, p. 15.

by forcing them to take longer and more dangerous routes to their destinations." Id. at 236.

The Fifth Circuit reaffirmed the reasoning of Frame in Deutsch, 882 F.3d 169. In that case, a hair salon patron who relied on a wheelchair for mobility sued a property owner under Title III of the ADA. Id. at 172. The court held that unlike the plaintiffs in Frame, the plaintiff in Deutsch had not shown that the complained-of ADA violation would negatively affect his day-to-day life: "All the record shows is that he visited there once. . . . [T]here is no evidence that [plaintiff] has any intent to return—nor is there any reason to believe that [plaintiff] is affected by [defendant's] alleged ADA violation in any way, let alone 'some concrete way.'" Id. at 174 (internal citations omitted).

Under Frame and Deutsch, Plaintiff must show that the complained-of violation had some concrete, negative effect on his day-to-day life. To show that he was actually deterred from returning to the Property, he must plead facts sufficient to show that he would return to the Property but for its alleged noncompliance with the ADA. See Strojnik v. Landry's Inc., 2019 WL 7461681, at *4 (S.D. Tex. Dec. 9, 2019) ("Plaintiffs who encounter barriers at public accommodations have standing to bring injunctive claims only if they show a plausible intention or desire to return to the place but for the barriers to access.") (emphasis in original).

-14-

Plaintiff fails to establish standing under the deterrent-effect doctrine for much the same reason as he failed to establish it under the intent-to-return theory. Even if the court assumed that it would be a "futile gesture" for Plaintiff to try to patronize the Property while it remains ADA-noncompliant, Plaintiff cannot be "deterred" from returning to the Property unless he has some intent to patronize it in the future—and he has pleaded no such intent. See Hunter 2013 WL 4052411, at *3 ("Because the plaintiff must still prove under the 'deterrent effect' method that she has an intent to return, the four-factor test applied to 'intent to return' cases also pertains to 'deterrent effect' cases[.]"). Unlike the plaintiff in Pickern, who exhibited a clear preference to patronize the noncompliant grocery store but was deterred from doing so, the Plaintiff here has alleged no preference for Texan Bank. See Pickern, 293 F.3d at 1135.

As was the case with the plaintiff in Deutsch, the record here shows only that Plaintiff visited the Property once. See Deutsch, 882 F.3d at 174. Moreover, this case resembles Deutsch in that the Plaintiff has failed to show that he is affected in any "concrete way" by the Property's alleged ADA noncompliance. See id. Plaintiff does not say when or why he would ever return to the Property, even if he obtained the injunctive relief he seeks. Nothing suggests that a favorable ruling would in any way change Plaintiff's day-to-day life. Indeed, it is not clear that Plaintiff had any reason for visiting the Property in January of

2020 except to photograph the parking lot and file this lawsuit.

Because Plaintiff has failed to allege that the ADA violations in question will negatively affect his day-to-day life, Plaintiff has not met his burden to show a likelihood of future injury necessary to obtain equitable relief.  See Deutsch, 882 F.3d at 174.  Since Plaintiff seeks only equitable relief (and attorney's fees) under the ADA, the court will dismiss the action without prejudice for lack of subject matter jurisdiction.  Because the court lacks subject matter jurisdiction, it will not consider Defendant's additional Rule 12 motions.

### III.  Conclusion and Order

For the reasons explained above, the court concludes that it lacks subject matter jurisdiction over Plaintiff's ADA claims. Accordingly, Defendant's Rule 12(b)(1) Motion to Dismiss (Docket Entry No. 21) is **GRANTED**, rendering ruling on the remaining Rule 12 motions unnecessary.

**SIGNED** at Houston, Texas, on this 20th day of October, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-16-